Minute Order Form (06/97)

JSb

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1440 | **DATE** | 3/22/2000 |
| **CASE TITLE** | Laye vs. Osco Drug Co. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

Defendant's Motion for Summary Judgment [Doc. # 58-1]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons set forth in the attached Memorandum Opinion and Order, the Defendant's Motion for Summary Judgment [Doc. # 58-1] is GRANTED. All other pending motions (including Doc. # 76-1 and 79-1) are denied as moot.   This action is closed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices |
|---|---|---|---|
| | No notices required. | | |
| | Notices mailed by judge's staff. | | MAR 2 3 2000 |
| | Notified counsel by telephone. | | date docketed |
| X | Docketing to mail notices. | | |
| X | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| | | | date mailed notice |
| MEA (Lc) | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number

100

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ADELLAR LAYE,                          )
                                       )
              Plaintiff,               )
                                       )    No.  98 C 1440
       v.                              )
                                       )    HONORABLE DAVID H. COAR
AMERICAN DRUG STORES, INC., and        )
OSCO DRUG, INC.,                       )
                                       )
              Defendants.              )

**DOCKETED**

MAR 2 3 2000

## MEMORANDUM OPINION AND ORDER

Before this court is defendants American Drug Stores, Inc. and Osco Drugs, Inc.'s

("defendants") motion for summary judgment on plaintiff Adellar Laye's ("plaintiff" or "Laye")

Title VII claims of race discrimination and retaliation.  For the following reasons, defendants'

motion is GRANTED.

### Statement of Facts

The plaintiff Adellar Laye, an African-American woman, has been working at Osco Drug

Store #671 ("the store") in Homewood, Illinois since 1984.  Osco Drug Store #671 was a "combo

store," which is an Osco Drug Store and a Jewel Supermarket in the same building.  Laye was first

hired as a clerk in the store and was then promoted to supervisor in 1991.  (Dft's 12(M) Stmt. ¶ 2).

Laye developed a positive performance record between 1984 and 1993, being named employee of

the month four times and awarded employee of the year in 1991.  (Pl's 12(N) Addt'l Facts ¶ 4).

**The Mangold Incidents**

In January of 1994, Matt Mangold ("Mangold") started as Manager of Osco Store #671 and

1

became Laye's supervisor. (Dft's 12(M) Stmt. ¶ 5). Some have described Mangold as intense, meticulous and demanding. (Id.). When he came on as manager, he informed all employees of the store that each night the aisles of the store had to be stocked, "faced", and dusted. Facing means pulling the product to the front of the shelf and facing the labels forward. (Dft's 12(M) Stmt. ¶ 6). Two or three nights a week, Mangold also had employees pull down expired advertisement tags off the shelves and put up new ones. (Dft's 12(M) Stmt. ¶ 7). However, while Mangold required Laye to stock, face and dust each night herself, he allowed other supervisors to delegate that duty to clerks. (Pl's 12(N) Resp. ¶ 6).

Mangold made a few other changes in the store as well. The store can make in-store purchases from Jewel without exchanging cash by submitting a "blue slip" for the purchase. Before Mangold came on as manager, many nonmanagerial employees, including Laye, signed blue slips for purchases. (Pl's 12(N) Resp. ¶ 8). After Mangold started, he collected all the blue slips and locked them in a drawer to which only he and his assistant managers had access in order to be in accordance with company policy. (Dft's 12(M) Stmt. ¶ 8). Mangold also locked up the personnel files, where before they were in an unlocked cabinet in an accessible office in violation of company policy. (Dft's 12(M) Stmt. ¶ 9). Finally, Mangold asked his full-time supervisors, including Laye, to work the register at the camera counter at the front of the store for two hours, from 4 to 6 p.m., during the time that the store was being remodeled in order to reduce hours and save the store labor costs. (Dft's 12(M) Stmt. ¶ 10). However, while Laye was scheduled to work the camera counter register, some supervisors, such as Colin Mundt, a white male, were never assigned to work the camera counter register. (Pl's 12(N) Resp. ¶ 10).

During 1994, Mangold would walk the aisles with Laye and criticize her work. On one

2

particular occasion, Mangold criticized Laye's work in front of other supervisors and a vendor. (Pl's 12(N) Resp. ¶ 11). However, Laye was never disciplined by Mangold. (Dft's 12(M) Stmt. ¶ 11).

On July 7, 1994, Laye submitted a written complaint to Mangold's immediate supervisor, Rich Fafara ("Fafara"), stating that Mangold was unfairly assigning her clerk duties such as cashiering and facing; unfairly criticizing her performance; and taking away privileges or responsibilities that she had held with previous managers. (Dft's 12(M) Stmt. ¶ 12). In particular, Laye states that her duties as a supervisor do not include general clerk duties, but instead include responsibilities such as to open and close the store; to direct clerks to dust, stock, and face the store; to make in-store blue slip purchases; and to have access to personnel files. (Pl's 12(N) Resp. ¶¶ 4, 12; Pl's 12(N) Addt'l Facts ¶ 6). The defendant states that supervisors have general clerk duties, as well as some of these other responsibilities. (Dft's 12(M) Stmt. ¶ 4; Dft's 12(N) Resp. ¶ 6). In her complaint, Laye stated that she thought Mangold's motivation for his actions were either racist, sexist, or in retaliation for Laye filing a workers' compensation claim. (Dft's 12(M) Stmt. ¶ 12). In particular, Laye states that Mangold told her he was treating her like a clerk and would continue treating her like a clerk until she got tired, quit, or moved on. (Pl's 12(N) Addt'l Facts ¶9).

In response to Laye's complaint, on July 17, 1994, Fafara and Mangold met with Laye and her union representative, to discuss Laye's concerns. Fafara determined that Laye's claims stemmed from a performance-related dispute, not discrimination. (Dft's 12(M) Stmt. ¶ 13).

On November 14, 1994, Laye forwarded her complaint to Glen Yergeau ("Yergeau"), the Regional Director of Human Resources, and Greg Gullickson ("Gullickson"), the District Manager. (Dft's 12(M) Stmt. ¶ 14). On December 1, 1994, Laye, her sister Juanita Washington, and Laye's union representative met with Yergeau, Gullickson, Fafara, Mangold, Lisa Moore (one of the

3

Assistant Managers at the store), and Darnell Allen ("Allen") (another District Manager) to discuss the complaint. (Dft's 12(M) Stmt. ¶ 15). While there is disagreement about what exactly was discussed at the meeting, both sides agree that at the closing of the meeting, an agreement was made that the defendant would investigate the July complaint and would get back to Laye and her sister by the end of January. (Dft's 12(M) Stmt. ¶¶15, 16; Pl's 12(N) Resp. ¶¶ 15, 16).

On January 17, 1995, Yergeau, Gullickson, Allen, and Mangold again met with Laye, her sister, and the union representative. Yergeau advised Laye that the defendant had concluded that no discrimination had occurred. On March 3, 1995, Yergeau wrote a letter to Laye and her sister confirming the defendant's findings. (Dft's 12(M) Stmt. ¶ 15).

In January of 1995, Mangold left the store and was replaced by manager Tom Hayes ("Hayes"). (Pl's 12(N) Addt'l Facts ¶ 11).

**The $50 Bill Incident**

In the store on the evening of May 31, 1995, Laye was working at the pharmacy counter with pharmacist, Bill Smigel. Laye's co-worker, Dawn DeFrank, returned a $50.00 bill to the pharmacy counter that she had found mixed in with checks from the pharmacy register. (Dft's 12(M) Stmt. ¶ 18). The next day, Laye's immediate supervisor, Lisa Moore ("Moore"), discovered the pharmacy register was short $50.00. Moore went to the pharmacy, where Laye was working with Smigel again. While not addressing any particular person but looking at Laye, Moore asked in a hostile and angry tone what happened to the $50.00 bill. (Dft's 12(M) Stmt. ¶ 19; Pl's 12(N) Stmt. ¶ 19). Smigel answered that it was in the drawer at the end of the night, DeFrank said she left it on the counter, and Laye said she did not know what happened to the bill. Moore left the pharmacy and let the matter drop. Laye was not disciplined for the missing $50.00. (Id.).

4

**The Suspension**

On July 5, 1995, Moore called Yergeau, Allen, and Sandra Zubik, Director of Labor Relations, to report that Laye had just sworn at and threatened Moore in the store and that Laye was now refusing to leave the store. (Dft's 12(M) Stmt. ¶ 20). Zubik and Yergeau told Moore to tell Laye that she was suspended pending investigation, and she needed to leave the store immediately. They also asked Moore to have the highest ranking Jewel employee on duty to be present during her conversation with Laye. (Id.). Moore relayed this information to Laye and asked her to leave the store. Laye responded that she did not know what Moore was talking about, but agreed to leave the store. (Pl's 12(N) Addt'l Facts, ¶ 17). Moore escorted Laye out of the store. (Pl's 12(N) Addt'l Facts, ¶ 19).

In the subsequent investigation by the defendant, Moore stated in an interview and in a written report that Laye had called Moore "a fucking bitch," had told Moore that she was "fucking with the wrong person," and that Laye has "people who would take care of her." (Dft's 12(M) Stmt. ¶ 22). In contrast, Laye denied these statements and said all she said to Moore was "I will not stand for that got-darn crap." (Dft's 12(M) Stmt. ¶ 23). No employees witnessed the exchange between Moore and Laye. (Pl's 12(N) Addt'l Facts, ¶ 18). After the investigation, Yergeau, Allen and Zubik reviewed the evidence and decided that they believed Moore's account of the events. Laye was given a two-day suspension. (Dft's 12(M) Stmt. ¶¶ 22-24).

Laye filed a complaint with the Illinois Department of Human Rights ("IDHR") on August 17, 1995. She subsequently filed this Title VII case, claiming hostile environment and retaliation. In response, the defendant has filed this motion for summary judgment.

## Standard for Motion for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter if law." Fed.R.Civ.P. 56(c); Cox v. Acme Health Serv., Inc., 55 F.3d 1304, 1308 (7th Cir. 1995). A genuine issue of material fact exists for trial when, after viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co, 47 F.3d 928, 931 (7th Cir. 1995). The party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hedberg, 47 F.3d at 931. If this burden is met by the movant, the non-movant must then set forth specific facts to show that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324. While affidavits, depositions and interrogatories are acceptable evidence for the non-movant to present, these are not the exclusive forms of evidence that can be used in responding to summary judgment. Wright, Miller & Kane Federal Practice and Procedure: Civil 3d § 2721. In deciding a motion for summary judgment, the court must read the facts in a light most favorable to the non-movant. Cuddington v. Northern Ind. Public Serv. Co., 33 F.3d 813, 815 (7th Cir. 1994). However, Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion: "there must be evidence on which they jury could reasonably find for

the [non-movant]." <u>Anderson</u>, 477 U.S. at 250.

**Analysis**

**A. Hostile Environment Claim**

**1. The claim is reasonably related to charge and was timely filed**

The defendant argues that the plaintiff cannot assert that Mangold racially harassed her between January and December of 1994 because she did not allege such conduct in her IDHR charge. Granted, "[a]s a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC [or IDHR] charge." <u>Cheek v. Western & Southern Life Insurance Co.</u>, 31 F.3d 497, 500 (7th Cir. 1994). However, the charge is read liberally, for the charge is completed by a layperson and not a lawyer. <u>Taylor v. Western & Southern Life Insurance Co.</u>, 966 F.2d 1188, 1195 (7th Cir. 1992). Therefore, "[t]he correct rule to follow in construing EEOC charges for the purposes of delineating the proper scope of a subsequent judicial inquiry is that 'the complaint in the civil action . . . may properly encompass any . . . discrimination like or reasonably related to the allegations of the charge and growing out of such allegations.'" <u>Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.</u>, 538 F.2d 164, 167 (7th Cir. 1976). See also, <u>Taylor</u>, 966 F.2d at 1194; <u>Babrocky v. Jewel Food Co.</u>, 773 F.2d 857, 864 (7th Cir. 1985).

In the present case, in the plaintiff's IDHR charge, the plaintiff discusses how she filed an internal grievance of racial discrimination with the defendant in July of 1994, based upon the behavior of Mangold, including threats of being written up and the loss of job responsibilities. (Pl's Ex. G). This gives the defendant notice of the charge of racial discrimination and harassment. <u>Taylor</u>, 966 F.2d at 1195 (citing <u>Schnellbaecher v. Baskin Clothing Co.</u>, 887 F.2d 124, 127 (7th Cir. 1989)). The plaintiff is not required to allege in her charge each and every fact that forms the basis

7

of each claim. Id. This claim of hostile environment is reasonably related to the plaintiff's IDHR charge of racial harassment.

The plaintiff's hostile environment claim is also timely. Under the continuing violation doctrine, a plaintiff may gain relief for a time-barred act by linking it with an act that is within the limitations period. Therefore, a consistent pattern of harassment is treated as "one continuous act that ends within the limitations period." Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992). In the present case, the plaintiff alleges that the harassment by Mangold occurred until he was transferred from the store in January of 1995. The plaintiff filed her IDHR charge on August 17, 1995. Therefore, the alleged harassing acts occurred within the 300 days limitations period. Hardin v. S.C. Johnson & Son, Inc. 167 F.3d 340, 344 (7th Cir. 1999). The continuing violation doctrine applies and all the actions by Mangold from January through December, 1994 will be considered.

**2. Merits of the claim**

To succeed on a hostile work environment claim, a plaintiff must establish (1) hostile conduct that alters the conditions of employment; and (2) a negligent response by the employer. Saxton v. AT&T Co., 10 F.3d 526, 533 (7th Cir. 1993). The plaintiff must show that the workplace was both subjectively and objectively hostile. Harris v. Forklift Systems, 510 U.S. 17, 21, 114 S.Ct. 367 (1993). In the present case, the defendant does not dispute that the plaintiff subjectively believed that her workplace was hostile. But the plaintiff must also show that the harassment was objectively "sufficiently severe or pervasive as to alter the conditions of the victim's employment and to create an abusive working atmosphere." Doe v. R.R. Donnelley & Sons, Co., 42 F.3d 439, 443 (7th Cir. 1994). This standard applies to racial discrimination cases under Title VII. Rodgers v. Western-Southern Life Insurance Co., 12 F.3d 668, 673 (7th Cir. 1993). Whether such a hostile

8

environment exists is a question of law.  Hardin, 167 F.3d at 345 (citing Brooms v. Regal Tube Co., 881 F.2d 412, 420 (7th Cir. 1989)).

Whether an environment is hostile is determined by looking at all the circumstances. Gleason v. Mesirow Financial, Inc., 118 F.3d 1134, 1143 (7th Cir. 1997) (quoting Harris, 510 U.S. at 23, 114 S.Ct. at 371).  The factors to consider are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferred with an employee's work performance." Saxton, 10 F.3d at 534 (quoting Harris, 510 U.S. at 23, 114 S.Ct. at 371).  The harasser's conduct need not have been explicitly racial in order to create a hostile environment.  However, the complained of conduct must have a racial character or purpose to support a Title VII claim.  Hardin, 167 F.3d at 345 (citing Malhotra v. Cotter & Co., 885 F.2d 1305, 1308 (7th Cir. 1989).

Laye has failed to show that her workplace was objectively hostile.  The instances that she has put forward–being critiqued in front of others, being required to stock, face, and dust aisles of the store, and being required to staff the camera counter register, to name a few–do not reach the threshold of being sufficiently severe or pervasive to alter Laye's conditions of employment. Johnson v. City of Ft. Wayne, 91 F.3d 922, 938 (7th Cir. 1996) (plaintiff's claim that he was denied use of the company vehicle, excluded from the workplace during sick leave, denied vacation pay, and demoted does not create an objectively hostile work environment).

Second, Mangold had a legitimate non-discriminatory reason for his actions towards Laye. If Laye did have access to blue slips and personnel files before Mangold came on as manager, it was in violation of company policy and thus Mangold had a legitimate reason to change the procedures. (Dft's 12(M) Stmt. ¶¶ 8, 9).  Also, Mangold states that the reason why he had supervisors staff the

9

camera counter register was to have a higher-level employee up front during the remodeling period as well as cut down on labor costs. (Dft's 12(M) Stmt. ¶ 10). These are legitimate business reasons for his actions.

In response, Laye has not put forward any evidence that Mangold's reasons are pretextual. Pretext means "a lie, specifically a phony reason for some action." Johnson, 91 F.3d at 931, (quoting Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995)). Laye does argue that she was still scheduled to staff the camera counter register after the remodeling of the store was completed. However, Mangold still had concerns about labor costs and thus kept some supervisors scheduled at the camera counter register. Therefore, the plaintiff has not shown that Mangold's reasons for his actions are not based in fact and were racially motivated.

## B.  Retaliation Claim

For the plaintiff to prevail on a retaliation claim under Title VII, she must show that (1) she engaged in a protected activity under Title VII; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the protected expression and the adverse action. Gleason, 118 F.3d at 1146. Laye argues that she suffered two adverse employment actions: in June of 1995, when Moore verbally harassed Laye and falsely accused her of stealing $50 from the pharmacy; and in July of 1995 when Moore falsely accused Laye of swearing and asked her to leave work pending investigation. (Pl's Resp., p. 12).

Laye has failed to present evidence that either adverse action was caused by her prior complaint of discrimination. The only evidence Laye presents is that these events occurred after the complaint was filed. However, the complaint was resolved six months prior to the two actions. Even if the court agrees with the plaintiff's argument that one should look at the time that Moore

returned from maternity in determining proximate time to the adverse activity–March of 1995–that was still four months before the actions occurred. (Pl's Resp., p. 13). "The temporal proximity of [the plaintiff's] filing and the [adverse action], standing by itself, does not sufficiently raise the inference that [the plaintiff's] filing was the reason for the adverse action." <u>Hughes v. Derwinski</u>, 967 F.2d 1168, 1174 (7th Cir. 1992) (finding four months between protected activity and adverse action was too long). See also, <u>Davidson v. Midelfort Clinic, Ltd.</u>, 133 F.3d 499, 511 (7th Cir. 1998) (five months too long for causal link).

Laye has also failed to show that Moore's actions were pretextual.   First, Moore had a legitimate, non-discriminatory reason to question Laye about the $50 bill, for Laye was on duty at the register from which the bill was missing, which Laye admits is true.  Second, Laye admits in her 12(N) Statement that Yergeau, Zubik and Allen suspended her for two days because they honestly believed Moore's account of Laye swearing and threats in July of 1995.  While Laye denies that she ever made these comments to Moore, the legal question is whether Yergeau, Zubik and Allen could have reasonably believed Moore's account of the interaction.  <u>Lenoir v. Roll Coater, Inc.</u>, 13 F.3d 1130, 1133-34 (7th Cir. 1994).  Laye has not presented adequate evidence for the court to conclude that the decision to suspend her was in retaliation.

## Conclusion

For the foregoing reasons, defendants American Drug Stores, Inc. and Osco Drugs, Inc.'s motion for summary judgment on plaintiff Adellar Laye's Title VII claims of race discrimination and retaliation is GRANTED.

Enter:

David H. Coar
United States District Judge

Dated: MAR 2 2 2000

12